# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

JOHNNY MOFFITT                  )
                                      )

      Plaintiff,              )
                                        )

                                        )
VS.                            )         No. 15-1067-JDT-egb
                                        )

                                        )
CORRECTIONS CORPORATION   )
OF AMERICA, ET AL.           )
                                        )

      Defendants.          )

---

ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* AND
ASSESSING $350 FILING FEE IN ACCORDANCE WITH PLRA,
GRANTING MOTION TO ADD ADDITIONAL DEFENDANT,
DENYING MOTION FOR INJUNCTION,
DENYING MOTION TO APPOINT COUNSEL,
DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

---

On March 27, 2015, Plaintiff Johnny Moffitt ("Moffitt"), Tennessee Department of Correction ("TDOC") prisoner number 129392, an inmate at the Hardeman County Correctional Facility ("HCCF") in Whiteville Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*.  (ECF Nos. 1 & 2.)  The Clerk shall record the Defendants as Corrections Corporation of America ("CCA"), Warden Michael Donahue, Assistant Warden Mitchell Bradshaw, Treating Physician Dr. First Name Unknown ("FNU") Richardson, Nurse Practitioner Mrs. Ollie Herron, Jobs Coordinator Kizzie Woods, Henderson County,[1] County Executive Dan Hughes,  Sheriff Brian Duke, Nurse Practitioner Kathy Dorris,

---

[1] The Court construes allegations against the Henderson County Sheriff's Department as

Unit Manager FNU Jones, Corizon Health Services ("Corizon"),[2] Dr. Bernhard Dietz, Health Services Administrator Alecia Cox, Health Services Administrator Jill Miller, Nurse NFU Washington, Trinity Food Services Supervisor Andra Gilbert, Grievance Board Chairperson Mrs. FNU Brown, Edna Bryant, Lois Smith, and Mrs. Julia Hughes.[3]

## I. Motion to Proceed *In Forma Pauperis*

Under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b), a prisoner bringing a civil action must pay the filing fee required by 28 U.S.C. § 1914(a).[4] Although the obligation to pay the fee accrues at the moment the case is filed, *see McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013), the PLRA provides the prisoner the opportunity to make a "down payment" of a partial filing fee and pay the remainder in installments. *Id.* at 604. In this case, Plaintiff has properly submitted an *in forma pauperis* affidavit and an inmate trust account

---

allegations against Henderson County, which is a named Defendant. The Clerk is DIRECTED to remove Henderson County Sherriff Department as a Defendant

[2]The CLERK is directed to add defendants pursuant to Moffitt's Amended Complaint (ECF No. 8) and Moffitt's Motion to Add Defendants (ECF No. 12)

[3]The complaint also purports to sue 4 Unknown Henderson County Commissioners. Service of process cannot be made on a fictitious party. The filing of a complaint against an unknown defendant does not toll the running of the statute of limitation against that party. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). The Clerk is directed to terminate the reference to the 14 Unknown Henderson County Commissioners on the docket.

[4] Twenty-eight U.S.C. § 1914(a) requires a civil filing fee of $350. However, pursuant to § 1914(b), "[t]he clerk shall collect from the parties such additional fees . . . as are prescribed by the Judicial Conference of the United States." The Judicial Conference has prescribed an additional administrative fee of $50 for filing any civil case, except for cases in which the plaintiff is granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. As the Court is granting leave to proceed *in forma pauperis* in this case pursuant to the terms of the PLRA, Plaintiff is not liable for the additional $50 fee.

statement, as required by 28 U.S.C. § 1915(a)(2).  The motion to proceed *in forma pauperis* is GRANTED in accordance with the terms of the PLRA.

Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that Plaintiff cooperate fully with prison officials in carrying out this order.  It is further ORDERED that the trust account officer at Plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to Plaintiff's trust account for the six months immediately preceding the completion of the affidavit.  When the account contains any funds, the trust account officer shall collect them and pay them directly to the Clerk of the Court.  If the funds in Plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the trust account officer is instructed to withdraw all of the funds in the Plaintiff's account and forward them to the Clerk of the Court.

On each occasion that funds are subsequently credited to Plaintiff's account the trust account officer shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust account officer shall withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10, until the $350 filing fee is paid.

Each time the trust account officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and submit it to the Clerk along with the payment.  All payments and accounts statements shall be sent to:

and shall clearly identify Plaintiff's name and the case number as included on the first page of this order.

If Plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately, in writing, of his change of address. If still confined, he shall provide the officials at the new facility with a copy of this order. If Plaintiff fails to abide by these or any other requirements of this order, the Court may impose appropriate sanctions, up to and including dismissal of this action, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at Plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the Warden of the HCCF to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

## II. The Complaint and Amended Complaint

In his complaint Moffitt alleges that on July 31, 2015,[5] he was found guilty of reckless aggravated assault. (Compl. at 6, ECF No. 1.) At that time Moffitt was incarcerated at HCCF. (*Id.*) He informed the staff that he had a blood clot in his right leg. (*Id.*) On September 18, 2014, Moffitt was placed in Henderson Community Hospital where an ultrasound confirmed the blood clot. (*Id.*) Moffitt was released after six days at which time Dr. Thomas McDonald, who is not a party to this complaint, gave instructions for Moffitt to rest. (*Id.*) The next day, September 24, 2014, Moffitt was taken to a prison at Henning, Tennessee. (*Id.*) On the same morning, "he was placed on a prison bus, handcuffed, shackled, belly chain, and a black box,"

---

[5]Moffitt provides this date; however, it seems incongruous with the remaining facts and dates provided by Moffitt.

and taken to Bledsoe County Correctional Facility. (*Id.*) Moffitt contends that Henderson County Sheriff Department put him in grave danger, if the blood clot moved, during the transport. (*Id.* at 6-7.)

On October 24, 2014, Moffitt was transferred to HCCF. (*Id.* at 7.) A month before the transfer, Moffitt saw Defendant Richardson, and his blood thinner was ordered. (*Id.*) The blood thinner was continued at HCCF, but Moffitt has not been referred to a specialist even though his conditioned worsened to having two blood clots in his right leg. (*Id.*) On February 2, 2015, Moffitt was taken to Jackson General Emergency Unit because his blood pressure fell to 116/41. (*Id.*) Moffitt was transported in a prison van without any type of life sustaining equipment placing Moffitt in danger of death if the blood clot had moved. (*Id.* at 8.) Moffitt filed a grievance in this matter, which was denied, and sought transfer, which was "ignored" by Defendants Richardson, Bradshaw, and Donahue. (*Id.*)

Moffitt alleges that Defendant Woods forced him, using threats of being written up, to attend a school class for up to six hours per day even though Moffitt told Defendant Woods that walking and sitting for that long hurt him. (*Id.*) On February 11, 2015, Defendant Richards signed a limited activity notice to allow Moffitt to drop the class. (*Id.*) Moffitt contends the actions by Defendant Woods were cruel and unusual and without any regards to his health or welfare. (*Id.*)

On February 10, 2015, Moffitt was informed by Sgt. Hotsettler, who is not a party to this complaint, that his clothes and commissary were missing from his tote boxes and that he should fill out a missing property report. (*Id.* at 9.) After Moffitt requested new clothes and did not receive a response, he filed a grievance which was denied. (*Id.*) Moffitt contends that he sent three or four requests to Defendant Jones who did nothing. (*Id.*) Moffitt has informed "all

involved" that he has to wear one set of Blues" for a week, "which is very unsanitary and degrading." (*Id.*)

On January 5, 2016, Moffitt filed an amended complaint with additional defendants, which was intended to supplement, rather than supersede his original complaint. (Amended Compl., ECF No. 8.) Moffitt alleges that Defendants Bryant, Woods and Smith have violated prison policy causing Moffitt mental anguish through intimidation, harassment, and threats of write-ups. (*Id.* at 4.) Those defendants have removed Moffitt from his medical incentive job, causing him to lose state pay and "good days" although he was not found guilty of any write-up. (*Id.*) Moffitt contends this is all discrimination against him. (*Id.*)

Moffitt alleges that Defendants Richardson and Herron have failed to treat his serious medical needs by often ignoring his sick call request and denying him adequate pain medication. (*Id.* at 5.) On July 2, 2015, Moffitt was charged for a sick call and an emergency sick call, but no examination of Moffitt's ear infection was performed by nurses or by Defendant Herron. (*Id.*) Upon his incarceration, Moffitt was diagnosed with blood clots, ruptured disc, inflammatory arthritis, ulcers, acid reflux, anal fissure, hernia, and other less serious medical conditions. (*Id.*) Moffitt states that he was receiving medicine to treat the acid reflux, hernia, and ulcers; however, the prison medical staff has not ordered or dispensed the medicine from home causing his ulcer to bleed when not taken. (*Id.*) Moffitt further contends that he has not received a "continuous amount of this medicine," and the medical staff knows the he will bleed more freely since he is taking a blood thinner. (*Id.*)

Moffitt contends that he has rashes on his legs caused by the blood clots, but he has not been seen by a specialist for the blood clots. (*Id.* at 6.) Moffitt has requested transfer to the special needs facility, but has been denied even though his judgment sheet recommended that he

be sent to the special needs facility. (*Id.*) He has been out of his medication for one month, which has caused his ulcers to bleed. (*Id.*) Moffitt contends the CCA and Corizon do not care about his health, but only about making a profit. Further, the employees of CCA and Corizon, such as Defendants Bryant, Smith, and Woods have retaliated against Moffitt's filing of grievances by not taking him to sick call and writing him up, causing added stress. (*Id.* at 6-7.)

Moffitt alleges that Defendant Dietz has failed to see him on a regular basis and will not discuss sending him to the special needs facility. (*Id.* at 7.) Moffitt argues the Defendant Dietz leaves the doctoring to the nurses, who are not trained, and has denied his request to see a specialist for blood clots. (*Id.*)

Moffitt alleges the CCA is engaging in a practice of illegal conduct by forcing him to enter a program or school class when TDOC policy states that at his age and medical condition, he is not required to attend. (*Id.* at 8.)

Moffitt further contends that the food service provided has caused him to get sick. (*Id.* at 9.) Moffitt alleges that the food trays are not kept in a sanitary condition, the food does not contain the right amount of nutrition, and Defendant Gilbert has cut back on sugar, salt, pepper and napkins provided with meals. (*Id.*) The meals do not contain any fresh fruit and they only receive one pint of milk per week. (*Id.*)

In a confusing allegation due to his previous allegations for lack of medical care, Moffitt appears to be alleging that he is being forced to go to the infirmary for which money is being removed from his trust account. (*Id.* at 10.) Moffitt alleges the Defendant Herron threatened him that he did not have a choice to go to the infirmary, and they would put him in the infirmary if they chose to do so which, Moffitt asserts, is a violation of his rights under the Americans with

Disabilities Act.  (*Id.*)  Moffitt has filed grievances, but, he contends that Defendant Brown will not hear his grievances because he filed one against her.  (*Id.*)

On January 25, 2016, Moffitt filed a Motion to Add Additional Defendants.  (Motion to Add Additional Defendants, ECF No. 12.)  The addition of defendants is an attempt to supplement, rather than supersede the original complaint.  The Motion is GRANTED.  Moffitt alleges that Defendant Hughes has instigated a prison disciplinary offense against Moffitt for refusal to participate in classes or programs; however, Moffitt argues this is in violation of TDOC policy.  (*Id.* at 2.)  Moffitt argues that the disciplinary filed is in retaliation for grievances filed upon other school staff members and will cause him to lose "good days' resulting in a longer term of incarceration.  (*Id.*)

Moffitt seeks punitive and compensatory damages as well as transfer to special needs facility in Nashville. (Compl. at 10, ECF No. 1.)

### III. Motion for Injunction and Motion to Appoint Counsel

Only January 5, 2016, Moffitt filed a Motion for Injunction seeking that the Warden of HCCF bring forth Moffitt's Uniform Civil Affidavit of Indigency.  (ECF No. 9)  The Court's approval for Moffitt to proceed *in forma pauperis* addresses this need; therefore, the motion is MOOT.

On January 5, 2016, Moffitt filed a Motion to Appoint Counsel.  (ECF No. 10.)  Pursuant to 28 U.S.C. § 1915(d), the "court may request an attorney to represent any such person unable to employ counsel."  However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases."  *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989).  Generally, a court will

only appoint counsel in exceptional circumstances. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989). Because Moffitt has not met the threshold showing of likelihood of success, the motion is DENIED.

## IV.  Analysis of Claims

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting

all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners

are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Moffitt filed his complaint on the court-supplied forms for actions under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the

purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendants Duke, Dorris, Cox, Miller, and Washington. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Plaintiff has sued Henderson County. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of plaintiff's claim against Henderson County.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal

policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. *Raub v. Correctional Med. Servs., Inc*., No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich.

Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify an official policy or custom which caused injury to plaintiff. Instead, it appears that plaintiff is suing Henderson County because he was confined in a county institution and the County employed persons who allegedly violated his rights.

The complaint does not allege a viable claim against Corizon Health or Corizon. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). Corizon Health and Corizon "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against Corizon Health or Corizon, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.*

The complaint does not adequately allege that Plaintiff suffered any injury because of an unconstitutional policy or custom of Corizon Health or Corizon. The allegation that unspecified defendants attempted to maximize profits is insufficient to establish that Corizon Health or Corizon had an unconstitutional policy, that the policy was applied in Plaintiff's case, and that

14

the policy was a "moving force" behind the denial of treatment. *Jackson v. Corr. Corp. of Am.*, No. 13-1102-JDT-egb, 2013 WL 3070778, at *4-5 (W.D. Tenn. June 17, 2013); *Ezell v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11-0405, 2012 WL 2601940, at *8 (M.D. Tenn. June 6, 2012) (prisoner's "allegations that the purported policies existed at CMS and that these policies were directly responsible for his alleged lack of medical care are conclusory and are not buttressed by any factual allegations. Although the plaintiff speculates that medical care is denied to inmates by Corizon or Corizon Health for monetary, non-medical reasons, he provides no factual allegations supporting this speculation. . . . Further, the plaintiff has not set forth any factual allegations supporting the conclusion that any such policies were the moving force behind the alleged deficiencies in his own medical treatment as opposed to being the result of actions of individual actors. Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss.") (report and recommendation), *adopted*, 2012 WL 2601936 (M.D. Tenn. July 5, 2012); *Moffat v. Mich. Dep't of Corr.*, Civil Action No. 09-14696, 2010 WL 3906115, at *9 n.11 (E.D. Mich. May 21, 2010) (allegation that "CMS had a policy of denying treatment in order to maximize profits" insufficient to survive motion to dismiss without supporting factual allegations) (report and recommendation), *adopted*, 2010 WL 3905354 (E.D. Mich. Sept. 27, 2010); *Crawford v. Mich. Dep't of Corr.*, No. 2:09-cv-7, 2010 WL 1424246, at *5 (W.D. Mich. Mar. 31, 2010) ("Plaintiff has pleaded no facts supporting his allegation that, pursuant to contract, Plaintiff's medical treatments were based upon cost concerns."); *see also Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) (inmate's "bare allegation of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief"). The complaint fails to set forth any facts suggesting that the execution of this alleged

policy, rather than individual malfeasance on the part of medical staff, caused the withholding of treatment.

"In the context of Section 1983 municipal liability, district courts in the Sixth Circuit have interpreted *Iqbal*'s standards strictly." *Hutchison v. Metro. Gov't of Nashville & Davidson Cnty.,* 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010). "Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief . . . ." *Ezell,* 2012 WL 2601940, at *5. The allegations that unspecified defendants failed "to promulgate and implement policies to provide appropriate medical care to inmates with serious medical and/or emergent medical conditions like obvious pain and discomforts associated with a reaction to prescribed medications" (Compl. ¶ 43, ECF No. 1 at 12), and that defendants "failed to hire and train competent medical staff" (*id.* ¶ 44), are entirely conclusory and are insufficient to identify a Corizon Health or Corizon policy and tie it to Plaintiff's injuries. *Ezell*, 2012 WL 2601940, at *5.

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Id.* at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)); *see also Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (same). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Johnson*, 398 F.3d at 874 (internal quotation marks and citation omitted).

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore*, 390 F.3d at 895; *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted); *see also Santiago,* 734 F.3d at 590 (same); *Johnson*, 398 F.3d at 874 (same). Plaintiff alleges that he is receiving blood thinner medicine for two blood clots, but he is not receiving medicine to treat his ulcers. The combination of the medication for one and the lack of medication for the other put Moffitt in a position to have ulcers bleeding at a dangerous rate. Thus, Plaintiff has sufficiently alleged an objectively serious medical condition.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he or she had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach

comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). [6]

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional

---

[6]On June 22, 2015, the Supreme Court held, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that excessive force claims brought by pre-trial detainees must be analyzed under a standard of objective reasonableness, rejecting a subjective standard that takes into account a defendant's state of mind. *Id.* at 2472-73. It is unclear whether or to what extent the holding in *Kingsley* will affect the deliberate indifference standard for claims concerning an inmate's health or safety, which the Sixth Circuit applies to both pre-trial detainees and convicted prisoners. *Sours v. Big Sandy Reg'l Jail Auth.*, 593 F. App'x 478, 483 (6th Cir. 2014). Absent further guidance, the Court will continue to apply the deliberate indifference analysis to these claims.

violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836).

Moffitt alleges that he was endangered by Henderson County during his transport to Bledsoe County Correctional Facility and to Jackson General Emergency Hospital; however, he does not state that he was injured, only that injury was possible. Moffitt alleges that Defendants Woods and the CCA required him to attend classes even though it put his health at risk. Both the claims regarding his transfer and the requirement to attend the classes are based on the potential for harm, not that any harm has occurred. Such claims of theoretical harm are insufficient to state an Eighth Amendment violation.

Moffitt additionally alleges that Defendants Richardson and Herron have failed to treat his serious condition by "often" ignoring his sick call request and denying him adequate pain medication. (Amended Compl. at 5, ECF No. 8.)) Similarly, Moffitt alleges that Defendant Deitz failed to see him on a "regular basis." Contradictorily, Moffitt alleges that Defendant Herron has forced him to go to the infirmary, resulting in the loss of funds from his trust account. In these claims, Moffitt is clearly receiving medical treatment. Simply because it is not the not the treatment he desires, the aforementioned actions do not rise to a claim of medical indifference.

"'[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a

19

plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. "When a doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.*; *see also Johnson*, 398 F.3d at 875 (same). "'[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 836). "A medical decision not to order an X-ray, or like measures, does not represent cruel or unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court." *Estelle*, 429 U.S. at 107.

Significantly, Moffitt alleges, "the medical staff" has not ordered or dispensed medicine and that the "medical staff" was aware that his ulcers will bleed more freely without pain medicine. (Amended Compl. at 5, ECF No. 8.) Defendants Richardson, Herron, and Dietz are alleged to have provided treatment, although, not the treatment Moffitt desired. Therefore, defendants Richardson, Herron and Dietz do not meet the subjective component for an Eighth Amendment violation.

The Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health. *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006); *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). "Food served to inmates need not be appetizing. The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs." *Heinz v. Teschendorf*, No. 05-CV-73470, 2006 WL 2700813, at *8 (E.D. Mich. Sept. 19, 2006). "[W]hile a substantial deprivation of food may amount to a constitutional violation, being served stale [food items), along with other food, does not."

*Williams v. Berge,* 102 F. App'x 506, 507 (7th Cir. 2004) (citation omitted). "A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected." *Stokley v. Dismas Charities, Inc.,* Civil Action No. 3:14CV-P30-S, 2014 WL 3721423, at *4 (W.D. Ky. July 28, 2014) (internal quotation marks omitted); *see also Davis v. Mich. Dep't of Corr.,* No. 1:13-cv-1231, 2014 WL 1232726, at *10 (W.D. Mich. Mar. 25, 2014) ("Plaintiff alleges little more than a single incident of food poisoning. Although Plaintiff subsequently did not eat certain of his bagged items during the remainder of Ramadan, Plaintiff does not allege that he was denied food altogether. . . . Because he alleges only temporary inconveniences, Plaintiff fails to state an Eighth Amendment claim . . . .").[7] The complaint alleges that the food services caused him to get sick; however, the only allegations against an individual are that Defendant Gilbert does not provide sugar, salt, pepper, or napkins. These allegations are not sufficient to find an Eighth Amendment claim.

Moffitt's allegation against Defendant Jones that his clothes were missing and not replaced is a property deprivation claim. Claims for deprivation of property are not actionable under 42 U.S.C. § 1983. *Parratt v. Taylor*, 451 U.S. 527 (1981), held that a negligent deprivation of personal property by state officials is not actionable under § 1983 if the state provides an adequate remedy for that deprivation. *Davidson v. Cannon*, 474 U.S. 344 (1986) and *Daniels v. Williams*, 474 U.S. 329 (1986) held that "the Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a negligent act of an official causing unintended loss of or injury to . . . property." *Hudson v. Palmer*, 468 U.S. 517 (1984) held that

---

[7]*But cf. Simpson v. Reece,* No. 2:08-CV-70, 2009 WL 2043881, at *2 (E.D. Tenn. July 2, 2009) ("For the purpose of deciding this motion, the Court will assume, but will not find, that serving out-of-date frozen dinners poses a substantial risk to an inmate's health.").

an intentional deprivation of personal property by state officials is not actionable under § 1983 if the state provides an adequate remedy for that deprivation. *See also Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Moffitt has no claim against Defendants Bryant, Woods, and Smith for the loss of his prison job. "[T]he Constitution does not create a property or liberty interest in prison employment [and] any such interest must be created by state law by 'language of an unmistakably mandatory character.'" *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (quoting *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986)) (additional citations omitted). The Sixth Circuit has consistently rejected claims by prisoners based on their loss of, or failure to be assigned to, a prison job. *See, e.g., Shields v. Campbell*, No. 03-5635, 2003 WL 22905312, at *1 (6th Cir. Nov. 26, 2003); *Carter v. TDOC*, 69 F. App'x 678, 680 (6th Cir. 2003); *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001); *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Because there is no property right in a specific job, likewise there is no property right to a specific wage for work performed. Rather, prison administrators may assign inmates jobs and wages at their discretion. *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978); *Anderson v. Hascall*, 566 F. Supp. 1492, 1494 (D. Minn. 1983); *Chapman v. Plageman*, 417 F. Supp. 906, 908 (W.D. Va. 1976). Additionally, allegations against these defendants for mental anguish does not create a sufficient claim because under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Moffitt has no claims against Defendant Bradshaw, Donahue or Brown for deficiencies in its grievance policy. Inmates do not have a right under the Due Process Clause to an effective

grievance mechanism. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Smith v. Corr. Corp. of Am.*, 19 F. App'x 318, 321 (6th Cir. 2001) (holding that prisoner "had no constitutional right to . . . disciplinary or grievance systems that met his standards"); *Shehee v. Luttrell*, 199 F.3d at 300; *Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 5328577, at *2 (W.D. Mich. Sept. 11, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access an institutional grievance procedure.") (report and recommendation), *adopted*, 2007 WL 3036493 (W.D. Mich. Oct. 16, 2007); *Mackey v. Carberry*, No. 2:07-cv-43, 2007 WL 2479296, at *3 (W.D. Mich. Aug. 28, 2007) (report and recommendation adopted as opinion of the Court); *Holloway v. Drew*, No. 2:07-CV-160-MEF, 2007 WL 1175067, at *2 (M.D. Ala. Apr. 4, 2007) (report and recommendation); *Robertson v. Montgomery Cnty.*, No. 3 06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty interest in the grievance procedure."); *Robinson v. Hastings*, No. Civ. A. 05CV387-KKC, 2006 WL 950185, at *4 (E.D. Ky. Apr. 10, 2006).[8]  Furthermore, Defendant Beasley did not violate Blair's constitutional rights by finding that his grievance was resolved and closed.  *George v. Smith*, 507 F.3d at 609-10 ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional]  violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Furthermore, Defendants Donahue, Bradshaw, Brown, and Dorris cannot be held liable merely because of their supervisory positions.  Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of

_____

[8] *See also* 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.").

respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint contains no allegations demonstrating that Defendants Donahue, Bradshaw, Brown, and Dorris authorized, approved or acquiesced in the actions of the other named defendant.

Moffitt alleges that the Defendant Hughes filed a disciplinary offense in retaliation for Moffitt's filing of grievances. "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (same); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) (same). "If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct." *Smith*, 250 F.3d at 1037.

The filing of a non-frivolous grievance is protected conduct under the First Amendment. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."). A grievance is frivolous if it complains of conduct that is not legally actionable. *Herron*, 203 F.3d at 415 ("Herron's pursuit of legal claims against [prison] officials . . . was protected conduct only to the extent that the underlying claims had merit."); *see Jackson v. Kronberg*, 111 F. App'x 815, 819 (6th Cir. 2004) (grievance that corrections officer has a spider-web tattoo that serves as an "Aryan Nation symbol" not grievable so the filing of the grievance is not protected conduct); *Ziegler v. State of Mich.*, 90 F. App'x 808, 810 (6th Cir. 2004); *Henley v. Pitcher*, 20 F. App'x 396, 397 (6th Cir. 2001); *cf. Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (inmate did not engage in protected conduct by litigating loss of property claim against prison in state court because such a claim is not encompassed within an inmate's First Amendment rights).

Moffitt's contention is that the disciplinary offense was for Moffitt's failure to participate in classes or programs. The assignment to classes or programs does not create a protected conduct. Further, there is no evidence to show that Moffitt was prevented from filing motions, grievances or other legal materials.

As part of his request for relief, Moffitt seeks an order directing that he be transferred to the Lois M. DeBerry Special Needs Facility ("DSNF"). (Compl. at 10, ECF No. 1)

Even if Moffitt were to establish that Defendants were deliberately indifferent to his serious medical needs, it does not follow that the appropriate remedy would be a transfer to the DSNF. *See*, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Branham v. Grinage*, No. 88-1611, 1989 WL 11070, at *1 (6th Cir. Feb. 10, 1989); *Christian v. Mich. Dep't of Corr.—Health Servs.*, No. 12-12936, 2013 WL 607783, at *3 n.3 (E.D. Mich. Jan. 28, 2013) (report and recommendation), adopted, 2013 WL 607779 (E.D. Mich. Feb. 19, 2013); *Skinner v. Unknown Grandson*, No. 05-70556, 2006 WL 1997392, at *12 (E.D. Mich. July 14, 2006). If the Court were to find an Eighth Amendment violation, an appropriate remedy might be an order directing Defendants to provide appropriate treatment for Moffitt's conditions. However, it would be up to Defendants to decide whether that treatment should be provided at Moffitt's current prison, the DSNF, or another facility.

### III. Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of

course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court cannot conclude that any amendment to Moffitt's claims would be futile as a matter of law.

## IV.  Conclusion

The Court DISMISSES Moffitt's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, leave to amend is GRANTED.  Any amended complaint must be filed within thirty (30) days after the date of this order.  Moffitt is advised that an amended complaint will supersede the original pleadings and must be complete in itself without reference to those prior pleadings.  The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Moffitt may add additional defendants provided that the claims against the new parties arise from the acts and omissions set forth in the original complaint.  Each claim for relief must be stated in a separate count and must identify each defendant sued in that count.  If Moffitt fails to file an amended complaint within

the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Moffitt is reminded that he must promptly notify the Clerk of any change of address, in writing, or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

**s/James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE